FILED
IN CLERK'S OFFICE
DISTRICT COURT E D N Y

★ FEB 16 2012 ★

LONG ISLAND OFFICE

DMJ:BTR
F.#2012R00

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

KERVAUGHN SHEPARD,

          Defendant.

- - - - - - - - - - - - - - - - X

12-0171M

REMOVAL TO THE MIDDLE
DISTRICT OF NORTH CAROLINA
(Rule 40, F.R.C.P.)

EASTERN DISTRICT OF NEW YORK, SS:

      FRANCIS X. RAU, being duly sworn, deposes and say that he is a Special Agent of the Drug Enforcement Administration, duly appointed according to law and acting as such.

      Upon information and belief, on February 14, 2012, an arrest warrant was issued by the United States District Court for the District of North Carolina charging the defendant with a violation of T. 21, U.S.C., §§ 846, 841(a)(1) that is conspiracy to possess with the intend to distribute one kilogram or more of heroin.

      The source of your deponent's information and the grounds for his belief are as follows:

      1.  A copy of the arrest warrant and complaint, outlining a narcotics distribution ring involving the distribution of a kilo quantities of heroin. <u>UNITED STATES v KERVAUGHN SHEPARD</u>, 12 MJ 31-1 (MDNC).

2.  On February 16, 2012, agents of the DEA arrested the defendant at his home in Valley Stream. Your deponent arrested an individual who identified himself as the defendant KERVAUGHN SHEPARD. The defendant admitted being the person identified in the North Carolina case. A comparison of the pedigree information of the defendant sought in the warrant also matched the defendant.

WHEREFORE, your deponent respectfully requests that the defendant be dealt with according to law.

*[signature]*
FRANCIS X. RAU
Special Agent
DEA

Sworn to before me this
16th day of February, 2012

/S/ E. THOMAS BOYLE, MJ

HONORABLE E. THOMAS BOYLE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| United States of America<br>v.<br><br>Kervaughn SHEPHERD<br>*Defendant(s)* | )<br>)<br>) Case No. 1:12MJ31-1<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of March 1, 2011 - February 7, 2012 in the county of Guilford in the Middle District of North Carolina, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841(a)(1) | knowingly and intentionally did unlawfully conspire, combine, confederate and agree together and with each other to commit offenses against the laws of the United States, that is: to knowingly, intentionally and unlawfully distribute one (1) kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I, controlled substance; five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride, a Schedule II, controlled substance; and one hundred (100) kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, all within the meaning of Title 21, United States Code, Section 812 |

This criminal complaint is based on these facts:

See attached Affidavit

X Continued on the attached sheet.

*Complainant's signature*

Otis Foster, III, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Feb 14, 2012

*Judge's signature*

City and state: Greensboro, North Carolina     L. Patrick Auld, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

1.  I, Otis Foster III, being duly sworn, hereby depose and state the following: I am a Special Agent for the United States Drug Enforcement Administration (DEA), Department of Justice, Greensboro, North Carolina, and as such, I am empowered under Title 21, United States Code, Section 878, to enforce Title 21 and other criminal laws of the United States, to make arrests and obtain and execute search, seizure, and arrest warrants. I am currently assigned to the DEA Greensboro Resident Office, Enforcement Group in Greensboro, North Carolina. I have been employed as a DEA Special Agent since January 6, 1997. I have been a Law Enforcement Officer for approximately 18 years. During my years in law enforcement, I have become familiar with the ways by which narcotics traffickers smuggle/sell narcotics and launder the proceeds.

2.  In connection with my official duties, I investigate criminal and civil violations of the Controlled Substances Act. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. In connection with my duties and responsibilities as a law enforcement officer, I have testified in judicial proceedings for violations of laws concerning controlled substances. I have participated in numerous drug

trafficking investigations, including investigations that have resulted in felony arrests for violations of Title 21 of the United States Code. I have been involved in various types of electronic surveillance, in the execution of search and arrest warrants, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from controlled substance trafficking. I have both conducted and assisted in the investigation of numerous narcotics-related investigations that resulted in the seizure of narcotics and related assets. Through training and experience, I am familiar with the methods and trends of trafficking in illicit drugs, as well as methods used by narcotic traffickers to conceal the proceeds of their unlawful activities from law enforcement.

3. This affidavit is based upon information obtained from my personal involvement in this investigation as well as information provided to me by other Special Agents and Task Force Officers of the DEA and other state and local law enforcement officers. Since this affidavit is being submitted for a limited purpose, I am not including all the facts and information which I

have learned about or obtained during the course of this investigation.

4. In or around June 3, 2011, an individual was arrested by the DEA Greensboro Resident Office after he/she attempted to receive a multi-kilogram shipment of cocaine hydrochloride. This individual began cooperating with DEA and has provided reliable information that is either known to be correct by law enforcement or has been proven to be accurate and reliable based on independent corroboration by law enforcement. For purposes of this affidavit, this individual will hereinafter be referred to as, "cooperating defendant #1."

5. Within the past thirty days, cooperating defendant #1 identified Kervaughn SHEPHERD as an individual involved in the distribution of multi-kilogram quantities of cocaine and marijuana in the Guilford County area. Cooperating defendant #1 further stated that on multiple occasions within the last eighteen months, the cooperating defendant #1 has either personally delivered or been involved in the delivery of multi-kilogram quantities of cocaine to residences located in Greensboro, North Carolina, which had been approved by SHEPHERD for the purposes of storing both marijuana and cocaine prior to distribution in other locations in Guilford County, North

-3-

Carolina. The cooperating defendant #1 stated that SHEPHERD has facilitated the delivery of several large amounts of marijuana to the MDNC between May 2010 and March 2011, and he had personally coordinated two shipments of forty kilograms and twenty kilograms of cocaine between March 2010 and June 3, 2010. The cooperating defendant also identified the Marriot Courtyard hotel, located on Wendover Avenue as the place where SHEPHERD usually stayed when in Greensboro. SHEPHERD is from Long Island, New York.

6. Independent of the information provided by cooperating defendant #1, agents identified an organizational cell manager who has received in excess of two thousand pounds of marijuana and approximately 20 kilograms of cocaine from SHEPHERD between June 2010 and June 2011. This cell manager, hereinafter referred to as, "cooperating defendant #2" was also debriefed by agents of the DEA.

Cooperating defendant #2 stated that following an initial introduction to SHEPHERD in Charlotte, North Carolina, SHEPHERD exchanged information and approximately one month later began to solicit cooperating defendant #2 to assist in the distribution of marijuana. SHEPHERD instructed cooperating defendant #2 to obtain a passport, which occurred, and several months later, the two traveled to Mexico and met with SHEPHERD's source of supply.

-4-

Between August 2010 and April 2011, SHEPHERD facilitated the transportation and delivery of approximately eight significant loads of marijuana, which were received and distributed by cooperating defendant #2, in the MDNC. According to cooperating defendant #2, approximately $1,000,000 in drug proceeds were generated by the sale of the aforementioned marijuana.

Cooperating defendant 2 was also able to provide agents with information that allowed the agents to identify the residence of SHEPHERD in Long Island, New York. Agents from the Greensboro, North Carolina Resident Office traveled to the New York Field Division, and with the cooperation and assistance of New York Field Division Agents, verified the address of SHEPHERD.

7. Within the last month, cooperating defendant #2 has placed several recorded telephone calls to SHEPHERD regarding an anticipated delivery of both cocaine and marijuana to cooperating defendant #2. During these recorded calls, SHEPHERD has agreed to supervise the delivery of drugs to a leased warehouse which SHEPHERD directed the cooperating defendant to obtain pending the shipment. On September 14, 2011, surveillance was performed of a meeting between cooperating defendant #2 and SHEPHERD in Atlanta, Georgia. With the assistance of the Atlanta Field Division, agents were able to photograph and record the meeting in its

-5-

entirety. During the meeting, SHEPHERD contacted the source of the anticipated shipment and referred to him as "P". "P" agreed that because enough time had passed, it was possible to re-establish operations in North Carolina following the seizure of the last shipment.

8. On Monday, November 14, 2011, a DEA confidential source, hereafter referred to as CS, contacted SA Bobby Kimbrough and informed him that SHEPHERD had contacted the CS to coordinate a marijuana shipment delivery to North Carolina. The CS relayed that SHEPHERD was in the process of finalizing plans to transport approximately 100 pounds of marijuana from New York City to the vicinity of Greensboro, North Carolina, during the week of November 14, 2011. SHEPHERD had agreed to allow the CS to take possession of the marijuana shipment and return payment for the drugs at a later date.

9. SHEPHERD informed the CS that he would contact the CS prior to a courier, identified as Christina LNU, leaving New York City. The CS explained to SHEPHERD that advance notice was needed because the CS was not currently in North Carolina and needed to build in travel time.

10. The CS was familiar with Christina LNU and knew that she had acted on behalf of SHEPHERD on several prior occasions to

either pick up marijuana (500 pounds on one previous occasion) or pick up marijuana proceeds (two previous occasions). The CS described Christina LNU as being a white female, medium height and weight, approximately 30 years old.

11. The CS was uncertain as to whether SHEPHERD would accompany Christina LNU but thought that the exchange would occur in the vicinity of a Courtyard Marriott Hotel located on West Wendover Avenue, Greensboro, North Carolina. The hotel is where SHEPHERD customarily stayed during most of the previous transactions.

12. On Tuesday, November 15, 2011, at approximately 9:00 a.m., the CS contacted SA Foster and stated that the CS had just contacted SHEPHERD who relayed that Christina LNU had not left New York yet but that he would contact the CS upon her departure. Following any additional contact with SHEPHERD, the CS was instructed to contact either SA Foster or SA Kimbrough.

13. On Monday, February 6, 2012, the CS received a phone call from Kervaughn SHEPHERD from cellular telephone (732)512-7368. SHEPHERD advised the CS that SHEPHERD could provide the CS with a kilogram of heroin via a Source who would arrive in Greensboro later that evening. The CS advised SA Foster and SA

Kimbrough that SHEPHERD was willing to provide the kilogram of heroin on consignment.

14. At approximately 11:00 a.m., SHEPHERD contacted the CS and advised that the contact number for the heroin courier was (917) 803-9118. SHEPHERD also advised the CS to contact the Source and finalize the arrangements. The CS contacted the Source who stated that he would be in Greensboro in about four hours, once there he would contact the CS.

15. At approximately 5:20 p.m., the heroin courier contacted the CS and agreed to meet at the Greensboro North Carolina bus station located on East Washington Street. Prior to leaving a predetermined location with the CS, the CS received a telephone call from SHEPHERD. SHEPHERD urged the CS to be prompt in meeting the courier and stated "don't keep these people waiting." The CS advised SHEPHERD that he/she was on the way to the location.

16. At approximately 5:30 p.m., the CS and the CS's vehicle were searched by S/A Kimbrough with negative results. The CS was then followed by surveillance units to the meeting location.

17. At approximately 5:50 p.m., the CS arrived in the parking lot of the bus station on East Washington Street. Several minutes later, the CS was approached by an unknown black

-8-

male who wore blue jeans and a gray hoodie. During the consensually monitored conversation between the unknown black male and the CS, the unknown male requested that the CS meet him in the vicinity of the Biltmore Hotel on West Washington Street in Greensboro, in order to receive the heroin. The CS agreed and repositioned his vehicle in the parking lot across the street from the Biltmore Hotel, while the courier walked back to his hotel to retrieve the requested heroin.

18. At approximately 6:05 p.m., the courier exited the hotel and re-entered the CS's vehicle. Once in the vehicle, the Source requested that the CS exit the lot, and drive eastbound on Washington Street. At the intersection of Elm Street and Washington Street, the unknown black male exited the vehicle and was last observed re-entering the Biltmore Hotel. The CS stated that the Source entered the vehicle and placed an irregular shaped package on the passenger side floor.

19. S/A Kimbrough and S/A Foster met with the CS immediately after the delivery was made and S/A Kimbrough took possession of the package. The evidence, weighing approximately 1,067 grams, field tested positive for the presence of heroin before being processed, labeled and submitted to the DEA Southeast Lab for analysis and safekeeping.

-9-

20. At approximately 7:00 p.m., the CS placed an additional call to SHEPHERD at (732) 512-7368. During the conversation, the CS notified SHEPHERD that the CS was "Good," indicating that the transfer had taken place. SHEPHERD reaffirmed that the CS was "ok" and that he would call the CS later regarding the heroin.

21. A computerized criminal records check on Kervaughn SHEPHERD, B/M, DOB: 1975, shows no previous arrests. The cooperating defendants and CS are cooperating with the High Point Police Department and Greensboro Resident Office of the Drug Enforcement Administration in an effort to show good faith in gaining a favorable recommendation of leniency from the DEA to the United States Attorney for pending criminal charges, upon giving truthful information. The cooperating defendants and CS understand no favorable recommendation of leniency will be made to the United States Attorney, unless this information is truthful and accurate.

22. Based upon the aforementioned, I believe there is probable cause to believe that from on or about March, 2011, to February 7, 2012, Kervaughn SHEPHERD, knowingly and intentionally unlawfully conspired, confederated and agreed with at least one other person to distribute: (1) one kilogram or more of a mixture and substance containing detectable amount of heroin, a Schedule

-10-

# UNITED STATES DISTRICT COURT
for the

Middle District of North Carolina

| | | |
|---|---|---|
| United States of America<br>v.<br><br>Kervaughn SHEPHERD<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:12MJ31-1 |

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay *(name of person to be arrested)* Kervaughn SHEPHERD, who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information X Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

21 U.S.C. §§ 846 and 841(a)(1) - knowingly and intentionally did unlawfully conspire, combine, confederate and agree together and with each other to commit offenses against the laws of the United States, that is: to knowingly, intentionally and unlawfully distribute one (1) kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I, controlled substance; five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride, a Schedule II, controlled substance; and one hundred (100) kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, all within the meaning of Title 21, United States Code, Section 812

Date: Feb 14, 2012

*Issuing officer's signature*

COPY

City and state: Greensboro, North Carolina

L. Patrick Auld, United States Magistrate Judge
*Printed name and title*

---

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

*Arresting officer's signature*

*Printed name and title*